UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

BODEN J. PERRY and
LUNDI D. PERRY,

Debtors.

Case No. 05-24027

Chapter 7

---

MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR TURNOVER

---

The debtors filed a chapter 7 petition on March 24, 2005, and claimed an exemption in a retirement benefit investment in Lucky Dog Realty, LLC,[1] under Wis. Stat. § 815.18(3)(j). The trustee filed an objection to the exemption and moved for turnover of the property. The matter was held in abeyance while the parties waited for a Private Letter Ruling by the Internal Revenue Service. After the IRS declined to issue such a ruling, the matter was deemed ripe for decision by this court.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (E), and the court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

On December 28, 1994, the debtor Boden Perry established a Prototype

---

[1] The exemption was described as "IRA Lucky Dog" because counsel for the debtor believed the investment was a rollover IRA, not a Keogh Plan. The investment was and is a Simplified Money Purchase Keogh Plan, and the K-1 Schedules of Lucky Dog Realty, LLC, were amended to reflect this.

Simplified Money Purchase Keogh Plan and Trust (see attachments to Attorney Winter's letter brief filed April 10, 2006) through Wheat First Butcher Singer.[2] The administrator of the trust was Bo Perry Consulting and, as sole proprietor, Mr. Perry was trustee of the plan. Mr. Perry was the only participant and the employer contributed 25% of his compensation into the plan. In 1997 the plan invested $100,000[3] in Lucky Dog Realty, LLC. The participant's interest vested upon entering the plan and the normal retirement date was defined as the participant's 65th birthday. No early retirement provision was provided.

ARGUMENTS

The trustee argues that the Boden J. Perry Keogh Plan is not exempt because Mr. Perry is the trustee of the plan.

The debtor claims he properly adopted a Simplified Money Purchase Keogh Plan, which was and is exempt pursuant to Wis. Stat. § 815.18(3)(j).

DISCUSSION

It is well settled that exemption laws must have a liberal construction, within the limits contemplated by the state legislature, so as to secure their full benefit to the debtor. *Julius v.*

---

[2]Wheat First Butcher Singer subsequently morphed into J.E. Liss & Company, which later merged with and became National Securities Corporation, which is now part of Wachovia Corporation. In 1997, at the time of the investment in Lucky Dog Realty, LLC, the clearing house for J.E. Liss & Company was Wexford Clearing Services, which subsequently merged with First Clearing, LLC. The convoluted history of corporate restructuring hindered the ability of the parties to reconstruct the paper trail.

[3]The debtors listed Lucky Dog Realty, LLC, with an exemption value of $40,000 and the trustee proposed to sell the interest for $40,000.

2

*Druckrey*, 214 Wis. 643, 649-50, 254 N.W. 358, 361 (1934). The Internal Revenue Code offers incentives to unincorporated entities to establish "tax-qualified" retirement plans for self-employed individuals. 26 U.S.C. § 401. Under these plans, which are commonly known as Keogh Plans, a sole proprietor or a partnership can maintain a retirement plan. Treas. Reg. §1.401-10(e)(1). Section 815.18(3) of the Wisconsin Statutes provides the following exemption:

> (j) *Retirement benefits*. 1. Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401-K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.
> 2. The plan or contract must meet one of the following requirements:
> a. The plan or contract complies with the provisions of the internal revenue code.
> b. The employer created the plan or contract for the exclusive benefit of the employer, if self-employed, or of some or all of the employees, or their dependents or beneficiaries and that plan or contract requires the employer or employees or both to make contributions for the purpose of distributing to the employer, if self-employed, the employees, or their dependents or beneficiaries, the earnings or the principal or both of a trust, annuity, insurance or other benefit created under the plan or contract and makes it impossible, at any time prior to the satisfaction of all liabilities with respect to beneficiaries under a trust created by the plan or contract, for any part of the principal or income of the trust to be used for or diverted to purposes other than for the exclusive benefit of those beneficiaries.
> 3. The plan or contract may permit the income created from personal property held in a trust created under the plan or contract to accumulate in accordance with the terms of the trust. The trust may continue until it accomplishes its purposes. The trust is not invalid as violating the rule against perpetuities or any law against perpetuities or the suspension of the power of alienation of title to property.
> 4. The benefits of this exemption with respect to the assets held or amounts payable under or traceable to an owner-dominated plan for or on behalf of a debtor who is an owner-employee shall be limited to the extent reasonably necessary for the support of the debtor and the debtor's dependents.
> 5. This exemption does not apply to an order of a court concerning child support, family support or maintenance payments, or to any judgment of annulment, divorce or legal separation.
> 6. In this paragraph:
> a. "Employer" includes a group of employers creating a combined plan or contract for the benefit of their employees or the beneficiaries of those employees.
> b. "Owner-dominated plan" means any plan or contract that meets the

requirements of subd. 2. and under which 90% or more of the present value of the accrued benefits or 90% or more of the aggregate of the account is for the benefit of one or more individuals who are owner-employees. For purposes of this definition, the accrued benefits or account of an owner-employee under a plan or contract shall include the accrued benefits or account of the spouse, any ancestor or lineal descendant, whether by blood or by adoption, or the spouse of such a lineal descendant, of the owner-employee under the same plan or contract.

    c. "Owner-employee" means any individual who owns, directly or indirectly, the entire interest in an unincorporated trade or business, or 50% or more of the combined voting of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation, or 50% or more of the capital interest or profits interest of a partnership or limited liability company.

Wis. Stat. § 815.18(3)(j).

In this instance, "[t]he employer created the plan or contract for the exclusive benefit of ... the employee[]." *See* Adoption Agreement for Wheat First Butcher Singer Standardized Money Purchase Plan and Trust §§ B1, C5, D1a; Boden J. Perry Keogh Plan §§ I, II.4.

Additionally, the "plan ... require[d] the employer ... to make contributions for the purpose of distributing to ... the employee[], or [his] beneficiar[y], the earnings or the principal or both of a ... benefit created under the plan." *See* Adoption Agreement for Wheat First Butcher Singer Standardized Money Purchase Plan and Trust §§ E1, E2a, E6, E9; Boden J. Perry Keogh Plan §§ IV.1, V, VIII. The plan thus meets the requirements of section 815.18(3)(j)2, Wis. Stats.

Because Mr. Perry was an individual who owned the entire interest in the administrator of the trust, Bo Perry Consulting, he is an "owner-employee," as that term is defined by Wis. Stat. § 815.18(3)(j)6.c.

Because 90% or more of the present value of the accrued benefits or 90% or more of the aggregate of the account is for the benefit of Mr. Perry, as owner-employee, the plan is an "owner-dominated plan" under Wis. Stat. § 815.18(3)(j)6.b. Consequently, the exemption

4

"shall be limited to the extent reasonably necessary for the support of the debtor and the debtor's dependents." Wis. Stat. § 815.18(3)(j)4.

The trustee did not object on the grounds that the plan is not reasonably necessary for the support of the debtor and his dependents, and the trustee has the burden of proof on that issue. *See In re Schlee*, 60 B.R. 524 (Bankr. D. Minn. 1986) (holding chapter 7 trustee, as objector to debtor's claim of exemption under Minnesota law, had burden of proving that debtor's Keogh Plan was not reasonably necessary for support of debtor and failed to meet that burden). Instead, the trustee objected to the exemption because he believed the debtor could not be a trustee of his own Keogh Plan, presumably due to the control a plan trustee could exert over the plan contributions, investments and distributions. This argument has been rejected in similar contexts and is rejected here. *See, e.g., In re Cilek*, 115 B.R. 974, 986-87 (Bankr. W.D. Wis. 1990) ("To argue that an asset is not exempt because the debtor controls the claimed exemption implies the premise that all assets controlled by the debtor are not exempt. Neither the language of the Bankruptcy Code nor the legislative history [of 11 U.S.C. § 522(d)] supports such twisted reasoning."); *In re Shailam*, 144 B.R. 626 (Bankr. N.D.N.Y. 1992) (finding debtors' interest in Keogh Plans exempt under New York law notwithstanding trustee's argument that debtor husband is 100 percent owner of professional corporation sponsoring plans).

As noted above, Wis. Stat. § 815.18(3)(j) does not place a limitation on the exemption because of the identity of the plan administrator, as was argued by the trustee. In fact, the statute provides additional safeguards against abuse of those plans where the owner is the "dominant" beneficiary. Such plans are not excluded from exemption, but rather are legislatively regulated. The trustee has not argued for any other limitation provided by statute; thus, the exemption is

5

allowed in its entirety.

The trustee's objection to claim of exemption is overruled and his motion for turnover is denied. A separate order will be entered accordingly.

August 1, 2006

                                            Margaret Dee. McGarity
                                            U.S. Bankruptcy Judge